1

2

3

4

5               UNITED STATES DISTRICT COURT

6                     DISTRICT OF NEVADA

7                            * * *

8    GINA GROSS-RUBIO,                          Case No. 2:12-cv-01281-APG-GWF

9                    Plaintiff,
                                                **ORDER GRANTING PARTIAL MOTION TO**
10        v.                                    **DISMISS**

11   METROPOLITAN LIFE INSURANCE
     COMPANY; DOES I through X, inclusive;      (Dkt. No. 18)
12   ROE CORPORATIONS XI through XX,
     inclusive,
13
                     Defendants.
14

15

16   METROPOLITAN LIFE INSURANCE
     COMPANY,
17
                    Counter-Claimant
18
          v.
19
     GINA GROSS-RUBIO,
20
                    Counter-Defendant
21

22

23   **I.    BACKGROUND**

24        Plaintiff Gina Gross-Rubio ("Gross-Rubio") was employed by Siemens Corporation

25   ("Siemens") from November 2007 through February 12, 2010.  She alleges that she stopped

26   working at Siemens because she became disabled on or about February 6, 2010.  She further

27   alleges that she had three back surgeries between January 2006 and April 2010, and that she has

28   been diagnosed with failed back syndrome ("FBS").  As a result, she alleges, she "is in extreme

1  pain, has several physical limitations and is unable to perform her duties at Siemens as a Credit

2  Collections representative." (Compl. ¶ 15.)

3       Gross-Rubio was a participant in Siemens's Short Term Disability Plan ("STDP") and

4  Long Term Disability Plan ("LTDP"). MetLife asserts that the STDP was self-funded by

5  Siemens and that the LTDP was funded by a policy provided by MetLife. As to short-term

6  benefits, MetLife admits that it "advised that Plaintiff receive the maximum benefits under the

7  [STDP]." (Dkt. No. 11 ¶ 22.) Gross-Rubio further alleges that she received short-term disability

8  benefits from February 2010 to August 2010 in the amount of $705.00 per month. MetLife

9  denies the duration and amount of the STDP payments.

10       As to long-term benefits, the parties agree that (i) MetLife approved Gross-Rubio's long-

11  term disability benefits on July 28, 2010; (ii) MetLife paid those benefits to Gross-Rubio from

12  August 14, 2010 to February 18, 2011 in the amount of $2,333.45 per month and $388.91 for the

13  final payment; (iii) MetLife terminated those benefits on February 18, 2011; (iv) Gross-Rubio

14  appealed the termination in April 2011 through MetLife's internal review process; and (v)

15  MetLife denied Gross-Rubio's appeal.

16       On July 18, 2012, Gross-Rubio filed suit against MetLife in this Court. She pleads four

17  claims for relief: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair

18  dealing ("insurance bad faith"); (iii) violation of section 502(a)(1)(B) of the federal Employee

19  Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), which allows a plan

20  participant to recover benefits owed to her under an ERISA-governed benefits plan; and

21  (iv) violation of ERISA section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), which provides

22  equitable relief for certain ERISA violations.

23       On October 3, 2012, MetLife answered and filed a counterclaim. (Dkt. No. 11.) MetLife

24  claims that Gross-Rubio's award of Social Security Disability Insurance created an overpayment

25  of LTDP benefits and that Gross-Rubio has failed to repay this overpayment to MetLife. MetLife

26  further claims that this failure violates the LTDP and the related Reimbursement Agreement.

27  MetLife seeks relief under ERISA section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), and under

28

1    state law for breach of contract.  On October 17, 2012, Gross-Rubio answered the counterclaim.

2    (Dkt. No. 13.)

3         Relevant to this Order, MetLife has moved to dismiss Gross-Rubio's First, Second, and

4    Fourth Claims for Relief on the grounds that the state law claims are preempted by ERISA, and

5    that the Fourth Claim -- seeking equitable relief under ERISA -- is duplicative of the Third Claim.

6    (Dkt. No. 18.)

7

8    II.    **ANALYSIS**

9         A.    **First and Second Claims for Relief — ERISA Preemption of State Law**
               **Causes of Action**

10

11        "There are two strands to ERISA's powerful preemptive force.  First, ERISA section

12   514(a) expressly preempts all state laws 'insofar as they may now or hereafter relate to any

13   employee benefit plan[,]'" *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)

14   (quoting 29 U.S.C. § 1144(a)).  Shielded from express preemption are state "law[s] . . . which

15   regulate[] insurance, banking or securities."  29 U.S.C. § 1144(b)(2)(A).  This exception is known

16   as the "savings clause."  *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102,

17   1114 (9th Cir. 2011).  The Supreme Court has held that a state law "regulates insurance" if it is

18   "specifically directed toward entities engaged in insurance" and "substantially affect[s] the risk

19   pooling arrangement between the insurer and insured.  *Ky. Ass'n of Health Plans, Inc. v. Miller*,

20   538 U.S. 329, 342 (2003).

21          Second, ERISA section 502(a) [29 U.S.C. § 1132(a)] contains a comprehensive
            scheme of civil remedies to enforce ERISA's provisions.  *See* 29 U.S.C. § 1132(a).
22          A state cause of action that would fall within the scope of this scheme of remedies
            is preempted as conflicting with the intended exclusivity of the ERISA remedial
23          scheme, even if those causes of action would not necessarily be preempted by
            section 514(a) [29 U.S.C. § 1144(a)].
24

25   *Cleghorn*, 408 F.3d at 1225.  For example, 29 U.S.C. § 1132(a)(1)(B) provides that "a civil action

26   may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the

27   terms of his plan, to enforce his rights under the plan, or to clarify his future benefits under the

28   terms of the plan[.]"  A state law claim by a beneficiary to recover benefits he alleges are due to

1    him under his ERISA-governed insurance plan is thus preempted. *Cleghorn*, 408 F.3d at 1225–

2    26. This second form of preemption has substantial force and does not require an exact identity

3    between the applicable ERISA provision(s) and the state law cause of action. *Aetna Health Inc.*

4    *v. Davila*, 542 U.S. 200, 214–15 (2004) ("Congress' intent to make the ERISA civil enforcement

5    mechanism exclusive would be undermined if state causes of action that supplement the ERISA

6    § 502(a) [29 U.S.C. § 1132(a)] remedies were permitted, even if the elements of the state cause of

7    action did not precisely duplicate the elements of an ERISA claim.").

8       Here, Gross-Rubio pleads that MetLife owes her long-term disability benefits under her

9    plan. (MetLife admits the plan is governed by ERISA.) Gross-Rubio claims relief under ERISA,

10    29 U.S.C. § 1132(a)(1)(B), and also under Nevada common law for breach of the insurance

11    contract and for insurance bad faith. The Supreme Court and the Ninth Circuit have repeatedly

12    held that breach of contract and insurance bad faith are "related to" employee benefit plans if the

13    plaintiff's claims amount to a challenge of the insurer's claims processing. *See Pilot Life Ins. Co.*

14    *v. Dedeaux*, 481 U.S. 41, 57 (1987); *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995);

15    *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412 (9th Cir. 1994).

16       Gross-Rubio argues that the savings clause excepts Nevada insurance law from ERISA

17    preemption. Her argument is misplaced, however, because she has not pled any causes of action

18    under a Nevada statute. Although Nevada has a comprehensive statute concerning unfair

19    insurance claims settling practices (NRS § 686A.310), the applicability of the ERISA savings

20    clause to that statute is irrelevant where, as here, the only claims pled in the complaint are under

21    common law. *See Jabour v. CIGNA Healthcare of Cal., Inc.*, 162 F. Supp. 2d 1119, 1125 (C.D.

22    Cal. 2001) ("The Ninth Circuit has also consistently and repeatedly held that state law claims for

23    breach of the implied covenant of good faith and fair dealing under California law are preempted

24    by the expansive scope of ERISA, and are not excepted from that preemption under the ERISA

25    saving clause." (citing *McBride v. PLM Int'l, Inc.*, 179 F.3d 737, 744–45 (9th Cir. 1999))).

26       Also, it is unclear whether a claim brought under NRS § 686A.310 would survive the

27    second strand of ERISA preemption. The Court need not address that issue, however, because

28    preemption would depend on the nature of the statutory claim and whether it fits within the scope

1    of civil remedies contained in 29 U.S.C. § 1132(a).  NRS § 686A.310 prohibits a variety of unfair

2    practices.  The Court is not in the proper position to hold that the ERISA savings clause protects

3    *all* actions brought under NRS § 686A.310—the precise holding that Gross-Rubio requests—in

4    light of the variety of those possible actions.

5         The second strand of ERISA preemption forecloses Gross-Rubio's common law breach of

6    contract and insurance bad faith claims.  These two claims attempt to establish that MetLife owes

7    disability benefits to Gross-Rubio under her benefits plan, which is precisely the civil remedy

8    provided by section 1132(a)(1)(B).  Although Gross-Rubio requests various judicial remedies that

9    are not available under section 1132(a) -- such as declaratory relief, injunctive relief, punitive

10   damages, and consequential damages -- her artful pleading does not escape the strong preemptive

11   force of ERISA.  The pertinent question is whether the state causes of action "fall within the

12   scope of th[e] scheme of [civil] remedies" contained in section 1132(a), not whether the judicial

13   remedies available under the state causes of action are allowed under section 1132(a).  *See*

14   *Davila*, 542 U.S. at 215;  *Cleghorn*, 408 F.3d at 1225.  If the test were as Gross-Rubio desires,

15   this strand of preemption would be quite narrow because section 1132(a) provides only for

16   recovery of the benefits due to the participant or beneficiary.  Furthermore, the Court declines to

17   interpret ERISA's second strand of preemption in such a strained manner.  It is well-established

18   that breach of contract and insurance bad faith are within the scope of section 1132(a).  *Davila*,

19   542 U.S. at 215; *Cleghorn*, 408 F.3d at 1225; *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d

20   1120, 1125 (D. Nev. 2003) ("ERISA preempts state law causes of action that offer remedies for

21   the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil

22   enforcement mechanism . . . , 29 U.S.C. § 1132(a).").

23        In sum, the First and Second Claims for Relief are preempted by ERISA and dismissed.

24   **B.    Fourth Claim for Relief — Equitable Relief under ERISA**

25        As to the Fourth Claim—equitable relief under 29 U.S.C. § 1132(a)(3)(B)—the relevant

26   issue is whether another part of section 1132 adequately remedies Gross-Rubio's alleged injuries.

27   Section 1132's "structure suggests that [it] act[s] as a safety net, offering appropriate equitable

28   relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy."

1    *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). "Where Congress elsewhere provided adequate

2    relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which

3    case such relief would normally not be 'appropriate.'" *Id.* at 515. "Money damages are 'the

4    classic form of *legal* relief,' and are not an available remedy under ERISA's equitable safety net."

5    *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Mertens v. Hewitt*

6    *Assocs.*, 508 U.S. 248, 255 (1993) (emphasis in original)).

7            Gross-Rubio seeks "any appropriate equitable relief . . . , including but not limited to

8    enjoining METLIFE from any further breaches of fiduciary duties and/or acts or practices which

9    violate ERISA and/or the terms of the Long Term Disability Plan[.]" (Compl. at 7.)  This

10   amounts to asking the Court to order MetLife to not break the law, which, to say the least, is an

11   overly broad request.  More specifically, Gross-Rubio's ultimate goal is to obtain the benefits she

12   alleges are due to her under her benefits plan.  Because section 1132(a)(1)(B) provides adequate

13   relief for that objective (recovery of the benefits themselves), the equitable remedies available

14   under section 1132(a)(3)(B) are unavailable to her. *Varity Corp.*, 516 U.S. at 512, 515.

15   Accordingly, the Fourth Claim for Relief is dismissed.[1]

16

17   **III.    CONCLUSION**

18           As set forth above, the Court dismisses Gross-Rubio's First, Second, and Fourth Claims

19   for Relief.  Because the dismissal of these claims is premised on issues of law and no additional

20   / / / /

21   / / / /

22   / / / /

23

24

25           [1] The Court notes that Gross-Rubio did not counter MetLife's argument that the Fourth Claim is

26   duplicative of the Third Claim.  Nonetheless, the Court believes that a merits analysis of MetLife's
     argument is warranted and declines to decide the issue in MetLife's favor solely on the basis that Gross-

27   Rubio did not present a counterargument (notwithstanding Local Rule 7-2(d)). *See Heinemann v.*
     *Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (invalidating local rule in Western District of Washington

28   that authorized grant of summary judgment on sole basis that non-movant failed to respond).

1   facts could cure the deficiencies, the Court dismisses these claims with prejudice. *See U.S. v.*

2   *Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).

3         DATED this 27th day of November, 2013.

4

5   _____

6   ANDREW P. GORDON
    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28